*73 Slaves had been entailed between the years 1705 and 1727, without being annexed to lands, and the question was, whether the entail was good ? At a former hearing before twelve judges, the court had been divided, and it came on now to he re-argued,
Mason, for the plaintiff,
argued nearly to the same effect; but such observations only, as were new shall' be taken notice of. The slaves in dispute were given to our ancestor in tail, without being annexed to lands, by will dated 1718. The donee in tail devised them, in 1755, to the defendant; against whom we bring this action as issue in tail: this is shortly the case. I insist that our title is good; 1st, under the common law ; 2nd, under the statute de donis ; 3rd, under the act of 1705 ; and 4th, that it was not impeached by the act of 1727. First, it is a rule that, whensoever any new species of property is introduced, which resembles a property formerly known in the law, the principles of the older are applied to the new. Finch, b. 1. c. 3. max. 24. Thus copy-holds are not generally descendible, and so cannot be entailed ; but when, by particular customs, they are descendible, all the qualities of other descendible estates are transferred to them : that is, they become entailable, &e. So slaves, though formerly not descendible, yet, when made so by law, immediately assumed the other qualities of descendible estates, that is, they became entail-able, &e. Lord Coke, 1 Inst. 20. a. shews what things were not within tire statute de donis ; to wit, an annuity, office of keeper of the hounds, he. because they do not savor of the realty; but in all these cases, says he,,the donee has a fee conditional, as before the statute, and by grant, or release, may bar his heir. If then the devise in our ease, was of a conditional fee, our ancestor not having aliened, the estate has descended on us : but, say they, he has aliened by will. Answer. This is not such an alienation as will bar the issue; for the rule is, that ‘ an accruing right is prefer-ed to a last will.’ Our claim is per formcm doni, which is paramount that of the defendant by the will j the law therefore here splits an instant as in 1 Inst. 185. between a devisee and one who claims by survivor. A devise of an heir loom is void, for the same reason, so of an heriot. This is not such an alienation then as will bar the issue. Second, our title is good under the statute de donis. The word ‘ tenemeniurn’ there, has been construed to extend to every thing savoring of the realty. An office is said to savor of the realty; much rather then shall a slave, who is exercised in tilling the ground. But, third, the act of 1705, has made them a realty itself; surely then, if an estate, which only savors of the realty, may be entailed ; a realty itself may. They object, that the Gth clause, having given a power of alienating by word of mouth only, if it is adjudged that they were entailable, they will be entail-able by parol. I answer, that before 22 Car. lands might be aliened by parol; and so might, in like manner, be aliened in tail. But it will be said, in the case of lands, livery of seisin was necessary, which was an act of such notoriety as to publish the alienation sufficiently. I answer, that to transfer the property of slaves, whether in fee-or in tail, a delivery is also necessary, as appears in Smith; v. Smith, 2 Str. 955, where it was ruled that a parole gift without some act of delivery, would not alter the property of chattels. And this delivery of the slaves would have been equally notorious with a livery of seisin of lands. It appears to have been the general opinion, between 1705 and 1727, that slaves might be entailed without lands; and by Finch, b. 1. c. 3. max. Gl. ‘communis error facitjusT Fourth, whether the act of 1727, affects this case? If the intention of the legislature was, that this act should be retrospective $ yet being iniquitous, it shall not have that effect. The second section says, ‘the design of the act of 1705, was and is,’ &e. It is absurd to say what was the design; that must be collected from the words. The legislature might establish a new . meaning for the future, but not for cases past. When they have enacted a Jaw, their power ceases, they have done their part, and then the judges are to take it up, and say what was the meaning. There have been two cases determined in the General court resembling this, though not accurately. That of Sheeles i). Jones, 1727, in which the act of 1727, was declared not to be retrospective ; and Burwell v. Johnson, which was the case of aii entail of slaves by will, before 1727, in which the slaves were entailed separately, though títere were lands given in another part of the will, with similar limitations.
Wythe, for the defendant.
The question is, 1st. Whether before 1727, a slave could be entailed, without being annexed to lands ? 2nd. If he could not, whether he might be conveyed in conditional fee ? 1st. The doctrine laid down by the counsel for the plaintiff, is, that every inheritable real estate was, by the statute dedonis, made entailable. If this assertion be true, it follows of consequence that the act of 1705, making slaves a real inheritable estate, did thereby make them entailable; but, if this assertion be not true, and if slaves, though real estate, are yet very different from those estates, which have been adjudged entailable, then that consequence does not follow. And here this previous question becomes necessary, to wit, what estates were entailable under the statute dedonis. Estates are divided into, 1st. Inheritances; 2nd. Freeholds; and 3rd. Chattels. The first alone are within the statute de donis. These were either, of lands, or other things. In the 2 Jac. c. 1. it was adjudged, that the dignity of Count of Westmoreland was entailable, within the statute; because it concerned lands. Nevils case, 7 Co. 61, The office of a steward, bailiff, marshall, a sergeantry, or custody of a church, the Earldom of Shrewsbury, entailable; as appears from the same authority. The reason given was, that they concerned lands: from which I infer, that, had they not concerned lands, they could not have been entailed, nor was it necessary the place should be in England, or even in existence. Albemarle,Was not in England. There was no such place as Rivers in those days. Part of the dignity consisted in possession. Lord Holt says that they consisted in dignity, office, and possession. If a baronet was named of a particular place, it was entailable. But it may be observed that the statute de donis,Laving no other effect than to prevent alienations, it was immaterial, as to a dignity, whether it was entailable or not; since, by the common law, it could not be aliened. It appears then, that dignities were not entailable, unless they concerned lands, A warranty might be entailed; so might charters. Copyholds were sometimes held at will only; sometimes were descendible, and were entailable, where the custom bad made them so. An ad-vowson might be entailed, so might predial tithes, which issued out of lands. Seigniories, rents and services were entailable; because by these, the title to the lands was remembered and preserved; and they were to the owner instead of the lands. A common might be entailed, as proceeding from the soil. So might estovers. An use likewise, because, before the statute of uses, it was an-equitable right, and since it is a legal right. An equity of redemption may be entailed, because equity considers the right to the lands to be in the mortgagor, and that the mortgagee has no other title to it than as a pledge for money. A villein in gross was not entailable, nor can any case be produced to prove he was. A villein regardant indeed might, for a reason hereafter to be given. I have here enumerated all the estates capable of being entailed, and they do, 1 believe, include every inheritable estate, except one, which 1 shall mention presently. I shall here make three observations. 1st. That the statute de donis describes the things which may be entailed by the words, ‘lands, manors, and tenements.’ 2nd. That whatever may be entailed under the statute besides lands, concerns lands, is annexed to, exerciseable in, or issuing from lands; or in other words nothing can be entailed but what has its foundation in lands. 3rd. In every case of an entail the prscipe is the proper remedy. The tenant in tail is to have an assise. The issue or remainder man is to have a forme-don, in both of which, ‘ manors, lands, or tenements’ must be mentioned. A copyholder, tenant in tail, must have a writ of assise in nature of a formedon. Co. Lit. 60. a .A quart impedit was the remedy for tire patron of a church; in which it is alleged he was seised as of freehold : for tithes the same remedy as for lands or tenements. For rents or services an assise lay, alleging he was seised of freehold. So for a common. There are three instances in which the remedies were of a different nature. 1st. A dignity; the reason was, because the person who bore it, could not be deprived of it, as he might of his lands, &c., and consequently, no remedy was necessary to be given, for it could only come before the court incidentally, or by a petition to the King to call him up to the House of Lords, who thereupon became judges, whether he had a right to be so called. The 2nd. is an action for breach of a covenant annexed to, and running with lands entailed, as of warranty, for instance. The 3rd. An action of de-tinue for charters. The reason of this is, that not the right to the subject entailed, but only appendages to-it, to wit, damages, are recovered. A slave cannot be entailed under the express words of the statute de donis. For, 1st. He is not a manor. 2nd. He is not lands. 3rd. He is not a tenement; for this must either be a corporate inheritance, which may be holden of some superior, or it must concern, be annexed to, or exerciseable within some corporate inheritance; this beingmy Lord Coke’s definition of a tenement. Co. Lit. 19. b. Now in the present case, they were not annexed to lands, nor to any corporate inheritance; neither do they, in their nature, concern, or are they exerciseable (for these two expressions are synonymous) within lands, in the sense intended by my Lord Coke. It has been said indeed, that they labor in the ground, and therefore are exercised and exerciseable in it; but this exposition of the Word exerciseable is superficial indeed! Lord Coke applies it to offices annexed or confined to a certain spot of land. Now what analogy is there between an office exercised in a certain territory, and a slave exercised in tilling the earth? Not so much as diere is between such an office and a spade. Tire office of the keeper of the «hounds is exerciseable in lands ; yet not being confined to any particular spot of lands, it is not entailable.* So a slave may be exercised in any lands, or no lands: he may be employed in ploughing the earth, or in ploughing the ocean; or set to work in manufactures of various kinds. Lord Coke, further says, tilings are not entailable, because they do not ‘ savor’ of the realty. But this he explains, ubi supra, to mean ‘ exerciseable.’ But, say they, if a tiling savoring of the realty is entailable, much rather shall a realty itself.- This I shall answer by,two observations 1st. That the act of 1705, gives them expressly but two qualities of lands, to wit, descent and dower. 2d. That that act, by making them descendible, according to the mariner of lands held in fee 'simple, did not give them the adventitious or collateral qualities of land. This I shall prove by producing a case of an inheritable realty in England, which is not entailable, viz. a copyhold. The similitude between a copyhold and a slave, is very striking; the former is made real and descendible by custom ; the latter by an act of Assembly. Nor does it destroy the resemblance that the one is by-law, and the other by custom, for consuetudo est altera lex, and the whole common law is founded on custom. Again, of copyholds there can be no dower; neither would there have been of slaves, had not the act expressly mentioned it, this .being a collateral quality of lands. . Of copyholds there can be no tenancy by the courtesy of England; no more can there of slaves'; this being omitted by the act. Copyholds are not assets to charge the heir on the bond of his ancestor; nor would slaves have been, had not the act particularly provided for it. For this see Brown’s case. 4. Co. 24. In iieydon’s case, 3. Co. 8. it is expressly declared that the statute de donis does not extend to copyholds, though real and de-scendible. The same similitude should be preserved here also, that is, neither should that statute éxtend to slaves. This instance of a real inheritable estate not entailable, proves the falsity of the general position laid down by the adverse counsel. The rule exceptio probat regulam has been much relied oh; but it is answered by this observation, that generally the provisos in the act of 1705, either take from slaves such inherent qualities of a real estate, as would have been the consequence of their being made real estate, or give them such collateral qualities as they would not otherwise have had. By a proviso in this act, an heir inheriting slaves from his father, shall account to his brothers and sisters for a proportion of the value. If the legislature intended to make them entailable, then the heir in tail is bound by this proviso, the words of which are general. But, that they could not intend this, is evident. The ruin of the heir would be its certain consequence, since he could not alien the slaves, to enable him to pay the money, and he might perhaps have no other estate. This act was intended to favor the heir, not to ruin him, by making him a purchaser. The argumentum ah inconvenienti can in no case be stronger than in the emailing of slaves. And the inconveniences are so obvious, that the legislature could not but have seen them, and, seeing them, they most surely would have guarded against them, by a proviso, as they have done against others, much less .considerable. But the truth is, they did not intend to make them en-tailable, and therefore no such proviso was thought to be necessary. The inconveniences attending the emailing of lands, have been loudly complained of; but how much greater are those attending entails of slaves ! Slaves are transitory and changeable both in the time and place of their existence, and difficult to be traced to the root from which they sprang; and the more so, since having no surname by which different families may be distinguished, no register is sufficient to remove the difficulty. But lands on the other hand are, fixed and unalterable. Again,’ lands cannot be conveyed but by record; but slaves may without record, and even without a deed. The entail of lands, of any value whatever, may be docked in England ; and so they may. here, if under the value of two hundred pounds sterling : whereas the entail of slaves can never by any method he docked, and these inconveniences will multiply daily, as slaves will be daily multiplying. The case of Burwell and Johnson, is cited against us, because slaves were there adjudged to be entailable .under the act of 1705. But in that case lands were'devised in the same clause, and by the same words with the slaves, and it was always held, that things annexed to lands might be entailed, as charters, covenants to.warrant, &c. But moreover, the thirteenth clause of the act of 1727, confirms the annexations of slaves to lands before that act. 2nd. If it should be adjudged, that they were a fee simple conditional, the inconveniences before complained of will be much increased, because some slaves will then be held in tail, and some in conditional fee. Slaves held under these two different titles will intermix beyond a possibility of investigation. . This old doctrine, which has lain neglected since the statute de donis, is now, after an interval of five hundred years, brought again into court. It has hitherto been the policy of judges to discourage perpetuities of every kind; but here is an attempt to introduce one in a form, to us, new. 3rd. There is another point in this case on which we rely for success, though the principal question should be determined against us. The act of 1727, says, that where a slave hath been, or shall be conveyed to a feme covert, the property shall vest in the husband. This clause is most clearly retrospective. Now the person under whom Wilkinson claims, and his wife, both survived 1727. In the cases of Jones v. Sheeles and Bruer v. Smith, it was determined, that the property did not vest in the husband, because in each of those cases the wife was dead before the act of 1727.
Pendleton pro defendant,
argued to the same effect. He argued, moreover, that the case of the villein cited by Mr. Attorney, from Co. Lit. must have been of a villein regardant; because he went to the heir; that, if slaves were entailable at all, they were entailable by parol. The consequence of which would be very bad; since a purchaser, could by no industry of his own, be secure in his purchase. That exceptio probat sed non extendit regulam ; and that the word ‘ hereafter’ in the.act of 1727, respects future constructions, not future gifts.
Attorney General, in reply,
observed ; that the gentlemen on the Other side, by an enumeration of what things were- capable of being entailed, had endeavored to draw this conclusion ; that nothing was so, unless exerciseable in lands. But a dignity may he entailed, though there be no such place in existence as the one named for its support. There is no such place as Rivers ; and there might as well be no Albemarle ; since that is in Holland, where an English dignity, cannot be exercised. The truth is, dignities are entailable, because of their great honor and importance in the state. An office too, they say, is entailable, because confined to a particular spot of ground ; but there was no locality in the office of marshal of England. An equity of redemption is a mere equitable title to redeem something forfeited. But admit their position. Slaves are .exerciseable inlands, and therefore maybe entailed. The case I mentioned oí a villein, must .have been of a villein in gross ; and. Lord Coke says, that ■ a tenant in tail, for life, or at will, is entitled to the.possessions of a villein. And if the villein in the hands of an executor, was intended a villein in gross, the villein held in tail, for life, or at will, would be so intended also ; as we cannot suppose Lord Coke, would have made a transition so sudden, from, a villein in gross, to a villein regardant. But that a villein in gross might be held in fee, appears.clearly from Lit. sect. 182. (So likewise from Co. Lit. 124. b. wherein it is said, there may be, a tenant by the, courtesy of a villein.) An argument has been drawn from the resemblance bétween a copyhold and slaves, to prove, that, though descendible,- they are not entailable. But a copyhold is, in the eye of the law, but an estate at will, and cannot, for that reason, be entailed. They were originally the estates given to villeins, who would have been enfranchised by the gift of a larger, estate than at will. In process of time they were allowed to be enlarged. If the act of 1705, intended to give slaves only the two properties of, descent and dower, it would only have said they shall, ‘ descend to heirs and widows,’ and would not have added, that they shall be real estafe. Dower was a collateral right, and therefore did not take place in copyholds. But fee act of 1705, declares that the proprietor of slaves shall have every right; which must include collateral rights, as well as others.-- But a right to entail, is not collateral; every right in the proprietor himself, is lineal; but dower, courtesy and rights in other persons, are collateral. It is objected, that if slaves were entailable alone under the act of 1705, fee heir must be accountable for a proportion of the value. But this proves too much; since it equally proves that slaves annexed to entailed lands, must be accounted for by the heir ; a position which can never be maintained. Besides the act of 1705, says the ‘ slaves of an intestate which shews they were speaking of such persons only as could,make a will and dispose of the slaves thereby : for. it would be absurd to say feat the value of entailed slaves is not divisible, if fee last tenant in tail made a will, and is divisible if he made none ; when that will could have no kind of effect on the slaves. In Burwell v. Johnson, say they, fee slaves were annexed to lands : but what was feat to the purpose ? since, in the act of 1705, not a word of entailing by annexation, is. mentioned. It is objected feat Blackwell, gave some of the entailed slaves from the heir, but gave him others not entailed, which should be taken as a compensation. If so, go into equity and ask such a decree. The last objection was, that.fee act of 1727, vested fee slaves in the husband, because he survived 1727. Answer. That clause speaks npt of entailed slaves, but of those only in which the wife had an absolute right. Blair, W. Nelson, T. \'el-son, Corbin, Lee, Tayloe, Fairfax and Page, were of opinion for the defendant, that slaves could never be entailed unless annexed to lands. Byrd, Carter and Burwell were of a different opinion.